May it please the Court, Ellsworth Bynes representing Appellant Richard Carey. I'd like to thank the Court for agreeing to hear this case, which I think will be beneficial to my client and also possibly thousands of other people that have been let down by their insurance company. Do you understand that ten minutes is added? I'm sorry? I said do you understand that ten minutes is added? I do understand that. Thank you. Okay. Briefly I'm going to talk about my client and his condition. Mr. Carey was hired in 1989. He was injured at work shortly after he was employed and he had to have surgery, but he went back to work. Then within the next three, four years he was involved in two separate car accidents, which the second one was so serious that it knocked him unconscious and required to have extensive surgeries. The only requirement or the only way that the employer could possibly have him back at work is if they would agree to workplace accommodations. The employer did grant workplace accommodations. The doctor said he might need it for the rest of his life and what those workplace accommodations were, were that he was required for two hours every morning to go to physical therapy and at that point he would do exercises with machines, he would stretch, and afterwards he'd need to ice his joints and also add heat to his muscles. Now counsel, I think if I remember the district court's decision in this case, it wasn't about the nature of your client's physical difficulties. It was about whether or not an appeal was timely sought. Is that right? So let's focus on that because I think that we don't have necessarily the record before us. I'm not disputing anything you just said about your client's situation. It seems to me you raised two points. One is that the Department of Insurance effectively was the advocate or the representative for your client. And the second is the idea that an appeal in this case would have been futile in light of the correspondence that was sent to the Department of Insurance. Correct, Your Honor. Could you focus on the second argument because I'm going to foreshadow a little bit for counsel for the insurance company here. I think that's your best argument. The futility? The futility. So at least for me, unless anyone disagrees, if you could spend some time on that. Yes, Your Honor. And I was getting to that with my, leading up to that with my other talking. Mr. Carey needed to have two hours of physical therapy every morning. With his employer, his employer agreed to let him have that. And Mr. Carey worked, even though his condition was getting worsened, for approximately 20 years with those accommodations. At that point, a new president came in and said, no, we're no longer going to allow you to have your physical therapy. They didn't have the accommodations there and they wanted him to basically appear for work at 8 o'clock in the morning. The insurance company, United, said that in their denial, the reason why that we're denying is because we think that your condition hasn't changed. You're still from the time where you were working until the new president came in. You should be able to do your work, your workplace physical therapy at work in the morning, which was totally ludicrous. The second issue is when we appealed to the California Department of Insurance, which does have the responsibility and the authority to represent policyholders, their number one environment is claims appeal. The CDI sent a letter requesting a re-evaluation to United. And the re-evaluation has specific meaning, as seen in Lundquist versus Continental Casualty. It means that you have to look at all the files critically and you send it out to an independent medical expert. Now what the insurance company came back with in replying to United was that, yeah, we looked at everything. In fact, if I may quote, they said, we received the request for, oh I'm sorry, one more time, in reviewing all the documentation in your file, we did not find the medical evidence supporting a change in your condition that would have prevented you from performing the duties of your occupation. Based on all the information available to us, we were unable to approve your LTD claim. So Mr. Kerry said, okay, fine, re-evaluation, they looked at it, and therefore it'd be totally futile for me to appeal it further. And then in summary judgment motion, the court allowed in something I didn't think they should have, was a declaration from an employee at United. The declaration was from a Lori Marr, and she stated, Plaintiff Richard Kerry's complaint to the California Department of Insurance, DOI, was assigned to me for handling. My role was to review and respond to Mr. Kerry's DOI complaint. In responding to Mr. Kerry's DOI complaint, I did not conduct a substantial review of his claim. Rather, my role was limited to determining the history of the United's initial claim decision and then summarizing that history. So let me stop you right there. So that letter, or that declaration, is there anything in the record to suggest that your client was made aware of that during the 180-day period? No, Your Honor. So even if we were to disagree with you as to the admissibility of that declaration, your point is it's kind of a who cares? My client didn't know. And so from your client's perspective, she had this letter, I'm he, I'm sorry, she was last case. He had this letter, and that's what he had? Yes. And so you're saying based on his reading of the letter, he would have understood that his case had been appealed and reevaluated and determined that it would have been doomed to fail had he appealed? Yes, Your Honor. This is a very interesting case and kind of a close question for me. There's two things I want to inquire about. One is, in its response to the DOI complaint, it looks like United, one of the last paragraphs in the letter, explicitly reminded Mr. Carey that he still had a right to appeal its denial of benefits and that he could do so within 180 days of the original denial. I'm just, shouldn't that have alerted Mr. Carey that it wasn't an appeal? I mean, why would they have put that if that was the response to the appeal? That doesn't, I'm trying to figure out how that's... Your Honor, my client believed that a reevaluation, which is clear of what it was supposed to have been and is clear of what wasn't done, he was under the impression that that was what was done and therefore it would have been futile for him to do that. The California, and he actually had, as his representative, the California Department of Insurance... Well, I'm not sure about that, but I understand what you're saying. I'm not, we're just going to assume that for right now, but just respond to my question, though. My response is that he felt that he had already appealed. But why would they have added a provision there saying you have 180 days to appeal? Probably the same reason they added you can contact the California Department of Insurance. It's a way of, they're out. They should have done a better way of saying that. Okay. And then my next question is, what's our standard of review here? How do we look at this? Is this, I mean, because it's, for the futility, it's the, you know, doomed to fail, but is it abuse of discretion? I believe it is abuse of discretion. So we have to say that the district court abused its discretion in determining that this was not doomed to fail. Yes, Your Honor, and they did it on a summary judgment motion, which they should have kind of gave deference to some of the things my client was saying. And my client at that time was not represented when he received that letter back from the insurance company. He was not represented by an attorney. He was represented by what he thought was the California Department of Insurance, which acted and has a responsibility and obligation to help the policyholders. But for you to prevail, we don't need to agree with you on the DOI representative point, correct? Yes, Your Honor, that is correct. But it's one of those things where I think that there's an issue of question of whether the DOI can or cannot represent a claimant. And that may be a question, but, I mean, again — For us to prevail, we just have to provide that it was futile for my client. Correct. I mean, I think that's probably an easier road for you to hoe than to — the bigger question is — Yes, Your Honor. — can the DOI step in as this uber-representative of people who write letters to them? I think  Yes, Your Honor. I understand your argument. I appreciate it. And based on the fact that all the things that they did, where they tried to say that he could do the two hours of physical therapy while at work, when his employee wouldn't let him do that, and no employee would, and also to basically — they know what a re-evaluation is. They didn't do it. They pretty much said and convinced everybody that they did. And then in summary judgment motion, they come in and said, oh, we found somebody that actually did it, and this is what she says. Gee, I just summarized the history of the claim file. I mean, that's wrong, Your Honor. Thank you, counsel. May it please the Court. Jenny Wang on behalf of United of Omaha Life Insurance Company. I first want to address the communications that United of Omaha had with Mr. Carey. The denial of his claim was communicated to Mr. Carey in a letter dated February 2011. In that letter, United of Omaha very clearly informed Mr. Carey that he had the right to appeal under the plan. He must submit a written request for a review to United of Omaha, gave him the address and the department to which he should appeal, and — I'm just — is this the letter after the DOI, or was this a letter prior to — Prior to the DOI, Your Honor. Go ahead. I'm sorry. Go ahead. This was the initial claim denial letter in February 2011. I got you. Thank you. Got it. Thank you. So United of Omaha first communicated to him that he had the right to appeal under the plan, told him where to write, told him it must be in writing, told him that he also had the right to bring a civil action once all his administrative rights to review had been completed. In that same letter, Your Honor, at the end, United of Omaha communicated to Mr. Carey, in addition, in addition, you have the right to complain to the California Department of Insurance. If you wish to do that, then write to the DOI at this address in Los Angeles. After Mr. Carey got that letter, what he did was he complained to the DOI. The DOI, in turn, wrote to United of Omaha and said, we received this complaint from Mr. Carey. Please respond to him within 21 days. In August of 2011, Lori Meir, who is a senior — Well, I didn't say please respond to him. The DOI letter to United asked it to re-evaluate the problem. That's correct. Re-evaluate the problem and communicate to Mr. Carey in response to this complaint. In August of 2011, that's precisely what Lori Meir, the senior compliance analyst at United of Omaha, did. In her August of 2011 letter, the very first sentence to Mr. Carey was, this is in response to your complaint to the DOI. She explained the company's response and concluded her letter with the statement that you have the right to appeal to United if you wish to have the company review your claim. If you wish to do that, write to United of Omaha at this address. The question is, if you say we've already re-evaluated it and it has no merit, but you can appeal, you would think not only have they denied me once, but they have re-evaluated it. I would submit, Your Honor. And they said we've evaluated it based on all the available evidence. Now, that might lead an uneducated person, uneducated in the law, or in the niceties of the insurance business, to think, well, here's a company that has already told me that they've considered it again and there's nothing to it. But if you want, you can go ahead and appeal. You know, if the Department of Insurance couldn't persuade them, why would he think that he'd be able to persuade them? He might think that's just a formality. Well, I would submit, Your Honor, that a reasonable reading of that letter wouldn't lead a person to believe anything else other than he still had the right to request a review from United. Yes, he has the right to request it, but is it futile? That's the question. Does he think, well... Because it looks like, I mean, in response, you know, United said that in reviewing the documents in the file, it had determined that Carrie was not disabled. I'm just trying to figure out why should we read that to mean something other than a substantive review done again? You know, it seems like that's sending a message that it was a substantive review, and so why would he figure out that anything would change if he appealed it? Well, the reason is, Your Honor, in that very same letter, United informed him that he could still appeal to United. And let me address that futility argument, Your Honors. The futility argument has no merit, and here's why. A complaint to the DOI and the company's response to that complaint is completely different than a response to a claimant's request for an internal review. The internal review process that's set forth in the governing plan documents is mandated by the ERISA regulations. And the plan and the regulations are very specific about what needs to occur in the process of an internal review. The review is completed by individuals who have no prior involvement in the adverse claim determination. It's a brand new set of eyes. Let me just jump in here. I see your point, but looking at the letter, the August 1st letter, it says you can appeal and it says forward it to this address. It's the same address that appears on the letterhead. I mean, so in terms of a futility decision, Mutual, and I know you didn't write this letter, Ms. Wang, but Mutual is saying, you know, we've reviewed all the documentation in your file. We did not find the medical evidence supporting the change in your condition. You may appeal to this address. And if you look up at the top, it's the same address from the people who just said you don't have a claim. So I'm not sure from his perspective, I agree. Internally, inside Mutual, it's a different process. But to him, he's being told, you can appeal to this entity, and it's the same one that just told him twice that he lost. Well, I would submit, Your Honor, let's examine more closely the two communications that United of Omaha had with Mr. Carey about the denial of his claim. Now remember, in the first letter, United of Omaha informed him, you have the right to request an internal review to United. And in addition, you have the right to complain to the DOI. Then in the second communication, United informs Mr. Carey, the very first sentence, this is in response to your DOI complaint. And then concludes and says, you can appeal to United at this address. But let's just concede that he, you know, he understood it wasn't a separate appeal or his own appeal. Still, there's a futility argument, I mean exception. Absolutely. And so, I mean, so he's saying, I mean, or we have to, I guess, look at it and say whether it was his own appeal or something else. Is there something here that indicated to him that any appeal would have been futile? So what's your response to that when he gets this letter that says, you know, after the DOI letter said to United to re-evaluate the problem? And then in response, United says, well, we've reviewed it. The futility exception to the exhaustion doctrine, Your Honor, is not based on any perception of futility by the claimant. In order to meet the futility exception, the claimant has the burden of coming forward with evidence that the appeal process was demonstrably doomed to fail. That evidence is utterly lacking in the record. He can't establish futility because there is no evidence that had United followed through with the appeal process in response to a request for an appeal, had brand new people look at the claim, had medical consultants, vocational analysts, review this, that the process would have ended in the same result. So you're saying that's how we have to look at it. The burden's on him to show that it was demonstrably doomed to fail. Absolutely. Not that he perceived, based upon speculation, that had he appealed, it would have been denied. And what's her standard of review? I asked that of your opposing counsel. How do we look at this? I know we have to see whether it was demonstrably doomed to fail, but is it an abuse of discretion of the trial court? These ERISA cases are very challenging to figure out because summary judgment, whether it's at summary judgment stage, the whole thing. So if you could help me, I'll figure that out. Absolutely, Your Honor. So the appeal is from an order granting a motion for summary judgment. And I, it's my belief that it's a de novo standard. Well, I would, okay, fair enough. I mean, I think that's bad for you. You would want abuse of discretion, but I appreciate the candor. Agreed, Your Honor. Okay, you wish you could say it was abuse of discretion. I do. I appreciate the candor. Thank you. And is there a case that you know of that says de novo? I just, I was looking for, and it's a lot of the Ninth Circuit cases seem to say abuse of discretion. Well, what I'm, what I have in mind, Your Honor, is when I, when I provide that response is not specific to ERISA, but just the general standard of review on appeal of a judgment, a summary judgment motion. Yes. Thank you, counsel. Thank you. All right. Case to start, do you have 30 seconds for it? Yes, Your Honor. Your Honor, I believe that United would have denied it regardless based on their conduct. They basically tried to show that my client could go back to work and do his physical therapy for two hours at work, which was ridiculous. They tried to, they basically ignored what the California Department of Insurance requested of them. And then at the very end, they came back and with this person with a declaration saying, gee, I really didn't do this at all. We were just kind of kidding in the first place. To me, it's clear that they had wanted to bushwhack my client from the very beginning. Thank you. The case that's argued will be submitted. The court will stand in recess. Thank you. All rise.
judges: Reinhardt, Murguia, Owens